UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOHN PETEREC,

                                        Plaintiff,

            - against -                                    **OPINION AND ORDER**

NEW YORK STATE POLICE TROOPERS SCOTT D.            No. 12-CV-3944 (CS)
HILLIARD and JOHN VANLANINGHAM, in their
individual capacities, and the COUNTY OF ORANGE,

                                        Defendants.
------------------------------------------------------------------------x

Appearances:

John Peterec
New York, New York
*Plaintiff* Pro Se

John E. Knudsen
Assistant Attorney General of the State of New York
New York, New York
*Counsel for Defendants Hilliard and Vanlaningham*

Derek J. Rolo
Assistant County Attorney for the County of Orange
Goshen, New York
*Counsel for Defendant County of Orange*

Seibel, J.

        Before the Court are the Motions to Dismiss of Defendants Hilliard and Vanlaningham,

(collectively, the "State Defendants"), (Doc. 35), and Defendant County of Orange, ("Orange

County") (Doc. 32), (collectively, the "Defendants").  For the following reasons, Defendants'

Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

## I. <u>Background</u>

### A. *Factual Background*

For the purposes of the present Motions, the Court accepts as true the facts (but not the conclusions) stated in Plaintiff's Second Amended Complaint ("SAC").  (Doc. 22.)

On May 28, 2008, Plaintiff alleges that he was driving on Route 17 West in the County of Orange when Hilliard pulled Plaintiff's car over and accused him, falsely and without probable cause, of driving while intoxicated and with an inoperable headlight.  (SAC 13-16.)  According to Plaintiff, Hilliard pulled him over after Vanlaningham, then off duty, had called the police department with a complaint about Plaintiff's erratic driving.  (*Id.* at 37.)  Plaintiff contends that the State Defendants were acting in retaliation for Plaintiff having previously sued New York State Police Sergeant Kyle J. Kroeger.  (*Id.* at 52; *see Peterec v. Kroeger*, No. 08-CV-1626, 2009 WL 320798 (S.D.N.Y. Feb. 9, 2009).)  Vanlaningham, who observed Hilliard making the arrest, allegedly stated, "I recognize [Plaintiff's] license plate, he's the one that sued Kroeger."  (SAC 52.)  Plaintiff further asserts that Hilliard refused to accommodate Plaintiff's disabilities by failing to conduct the "Field Sobriety Test" at the Monroe police department.  (*Id.* at 17-19.)  Additionally, Plaintiff contends that his blood alcohol level should have been established by a blood test rather than a breathalyzer, as his asthma medication influenced the breathalyzer's results.  (*Id.* at 23.)  Plaintiff further alleges that Hilliard subsequently conspired with the Office of the Orange County District Attorney ("DA") to conduct a malicious prosecution against him.  (*Id.* at 45-48.)  Finally, Plaintiff contends that Orange County has failed to train its employees.  (*Id.* at 55-62.)

Plaintiff asserts claims of false arrest, false imprisonment, malicious prosecution, conspiracy, retaliation, and abuse of criminal process.  He also claims violations of the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, ("ADA"), deprivation of his

right to access the courts, negligent hiring and retention, and related state-law claims.

### B. *Procedural History*

Plaintiff filed his Complaint on May 16, 2012. (Doc. 2.)  On June 8, 2012, I *sua sponte*

dismissed Plaintiff's claims against the Orange County DA and Assistant District Attorneys

("ADAs") Tiffany Reis and Jennifer Onofry, and instructed Plaintiff to file an Amended

Complaint, (Doc. 6), which he did on July 9, 2012, (Doc. 11).  By letter dated September 12,

2012, the State Defendants requested a pre-motion conference to seek permission to file a

Motion to Dismiss. (Doc. 12.)  On October 10, 2012, the County of Orange wrote a letter

similarly requesting a pre-motion conference to discuss its anticipated Motion to Dismiss. (Doc.

19.)  Defendants' letters gave Plaintiff notice of the purported defects in his Amended

Complaint, and thus in an Order dated October 25, 2012, I instructed Plaintiff to file a Second

Amended Complaint to address the issues detailed in the letters. (Doc. 21.)  Plaintiff filed his

SAC on November 20, 2012, (Doc. 22), and Defendants moved to dismiss shortly thereafter,

(Docs. 32, 35).

## II.  Discussion

### A. *Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  But while pleadings of a *pro se* party should be read "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)), dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements, *see Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d

Cir. 1997); *accord Honig v. Bloomberg*, No. 08-CV-541, 2008 WL 8181103, at *4 (S.D.N.Y.

Dec. 8, 2008), *aff'd*, 334 F. App'x 452 (2d Cir. 2009).[1]

   B.  *Documents Considered on a Motion to Dismiss*

   When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted

within the four corners of the complaint, the documents attached to the complaint as exhibits,

and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet*

*Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

There are limited circumstances, however, when it is appropriate for a court to consider

documents outside of the complaint in connection with a motion to dismiss.  *See Weiss v. Inc.*

*Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (court may properly consider

documents "integral" to complaint, documents relied upon in drafting complaint, public

documents, and facts of which judicial notice may be taken).  When matters outside the

pleadings that do not fall into these limited categories are included with a response to a Rule

12(b)(6) motion, "a district court must either exclude the additional material and decide the

motion on the complaint alone or convert the motion to one for summary judgment . . . and

afford all parties the opportunity to present supporting material."  *Friedl v. City of N.Y.*, 210 F.3d

79, 83 (2d Cir. 2000) (internal quotation marks omitted).

   The State Defendants submitted the incident report for Plaintiff's May 28, 2008 arrest,

the corresponding Uniform Traffic Tickets, and Plaintiff's Notice of Claim, (Knudsen Decl. Exs.

A-B),[2] with their motion papers.  I can consider the Uniform Traffic Tickets because they are

integral to Plaintiff's SAC, as they are mentioned in the SAC and correspond to SAC Exhibit 1.

It is not proper, however, for me to consider either the incident report or Plaintiff's Notice of

---

[1] Copies of all unpublished decisions cited herein will be sent to Plaintiff.

[2] "Knudsen Decl." refers to the Declaration of John Knudsen.  (Doc. 37.)

Claim in resolving a motion to dismiss where, as here, they were not attached, incorporated by reference, or integral to the SAC.  *See Weiss*, 762 F. Supp. 2d at 567; *see also Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 425 (S.D.N.Y. 2013) (reference in Amended Complaint to Notice of Claim still "clearly insufficient" to render document integral to Amended Complaint); *Coggins v. Cnty. of Nassau*, No. 07-CV-3624, 2008 WL 2522501, at *6 n.4 (E.D.N.Y. June 20, 2008) (refusing to consider incident reports at motion to dismiss stage) (collecting cases), *aff'd sub nom. Coggins v. Buonora*, 361 F. App'x 224 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 995 (2011).  In any event, these documents would not affect my analysis at this stage of the litigation.

C. *Analysis*

1. Claims Against the State Defendants

Plaintiff asserts several state and federal causes of action against the State Defendants arising out of his May 28, 2008 arrest:

- 42 U.S.C. § 1983 and state-law False Arrest and False Imprisonment (Hilliard)
- 42 U.S.C. § 1983 and state-law Malicious Prosecution (Hilliard)
- 42 U.S.C. § 1983 Unlawful Seizure Under the Fourth Amendment (Hilliard)[3]
- ADA and New York State Human Rights Law ("NYSHRL") Violations (Hilliard)
- 42 U.S.C. §§ 1981, 1983, and 1985 Conspiracy with the Orange County DA's Office (Hilliard)
- False Reporting of an Incident in violation of New York Penal Law § 240.50(3) (Hilliard)
- 42 U.S.C. § 1983 Retaliation Under the First Amendment (State Defendants)

---

[3] Although Plaintiff did not state a separate cause of action alleging a Fourth Amendment (or Fourteenth Amendment) violation in his SAC, I will construe the SAC to include an allegation that Hilliard's traffic stop was an illegal seizure under the Fourth and Fourteenth Amendments.  (*See* SAC 13; Memorandum of Law in Support of John Peterec, Plaintiff, *Pro Se* Opposition to Defendants' Motion to Dismiss ("P's Opp."), (Doc. 50), 13; *Albright v. Oliver*, 510 U.S. 266, 310 n.28 (1994) (Stevens, J., dissenting) ("[T]he Fourth Amendment itself does not apply to state actors.  It is only because the Court has held that the privacy rights protected against federal invasion by that Amendment are implicit in the concept of ordered liberty protected by the Due Process Clause of the Fourteenth Amendment that the Fourth Amendment has any relevance in [an unlawful seizure] case.").)

- 42 U.S.C. §§ 1981, 1983, 1985 Conspiracy (State Defendants)
- 42 U.S.C. § 1983 First Amendment Violation of Right of Access to Courts (State Defendants)

(SAC 13-54, 80-84.)  The State Defendants contend that except for Plaintiff's claims for malicious prosecution and denial of access to the courts, Plaintiff's federal claims are barred under the applicable statutes of limitations.  (State Ds' Mem. 5-6.)[4]  The State Defendants further allege that the claims that are not time-barred should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*Id.* at 11-12.)

    a.  <u>Statute of Limitations</u>

      i.  <u>False Arrest and False Imprisonment</u>

Although Section 1983 provides a federal cause of action, "federal law looks to the law of the State in which the cause of action arose . . . for the length of the statute of limitations." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (statute of limitations is "that which the State provides for personal-injury torts").  In New York, the applicable statute of limitations for a Section 1983 claim is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989); N.Y. C.P.L.R. § 214(5).  Federal law, however, determines the date on which a Section 1983 action accrues, and the general rule is that "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (alteration, internal citation, and quotation marks omitted).

The statute of limitations for a claim of false imprisonment – and false arrest, which is a species of false imprisonment – begins to run "when the alleged false imprisonment ends." *Id.* at 388-89 (internal quotation marks omitted).  False imprisonment ends when "the victim becomes held pursuant to legal process – when, for example, he is bound over by a magistrate or arraigned

---

[4] "State Ds' Mem." refers to the Memorandum of Law in Support of the Trooper Defendants' Motion to Dismiss. (Doc. 38.)

on charges." *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (summary order) (alteration and internal quotation marks omitted).  Likewise, damages for false arrest "cover the time of detention up until issuance of process or arraignment, but not more." *Wallace*, 549 U.S. at 390 (internal quotation marks omitted).   In this case, the claim for false arrest arose upon Plaintiff's May 28, 2008 arrest and ended upon his arraignment soon thereafter.

Plaintiff contends that *Heck v. Humphrey*, 512 U.S. 477 (1994), applies instead of *Wallace*, and thus his claims for false arrest and false imprisonment did not accrue until after the criminal proceedings were terminated in his favor.  (*See* SAC 30-33 ("The prosecution could not obtain a conviction of me without the evidence(s) obtained by the false arrest.  As such, the claim accrued when the prosecution ended. . . ."); P's Opp. 11.)  As the charges against Plaintiff were dismissed on May 18, 2011, Plaintiff alleges that he had three years from that date to file his Complaint, making his May 16, 2012 Complaint timely.  (SAC 33.)  The Supreme Court expressly rejected this argument in *Wallace*, where the plaintiff also theorized that the "initial Fourth Amendment violation set the wheels in motion for his subsequent conviction and detention," and thus the date he was released from custody was when his false imprisonment claims accrued.  *Wallace*, 549 U.S. at 391.  In rejecting the plaintiff's argument, the Supreme Court noted that "even though the full extent of the injury [wa]s not then known or predictable," the statute of limitations began to run when the plaintiff appeared before the magistrate and was bound over for trial.  *Id.* (internal quotation marks omitted).  Furthermore, the Court explicitly stated that *Heck* would not apply to a situation where, as here, there is no outstanding criminal judgment.  *Id.* at 393 ("[T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment.") (emphasis in original) (internal quotation marks omitted).  Thus, Plaintiff's

contention that his false imprisonment did not end until the criminal proceedings terminated must be rejected.[5]

On May 28, 2008, following the traffic stop, Plaintiff was issued three appearance tickets, (*see* SAC Ex. 1; Knudsen Decl. Ex. A, at 3-5), and thus his claim accrued on that date, *see DeMartino v. New York*, No. 12-CV-3319, 2013 WL 3226789, at *13 (E.D.N.Y. June 24, 2013) (false arrest claim accrued when plaintiff was issued appearance ticket); *Weir v. City of N.Y.*, No. 05-CV-9268, 2008 WL 3363129, at *10 (S.D.N.Y. Aug. 11, 2008) ("[Plaintiff's] [Section] 1983 claim for false arrest accrued . . . when he was given the desk appearance ticket and released from the stationhouse.").[6]  As more than three years elapsed between the date Plaintiff was issued the appearance tickets and the filing of this lawsuit on May 16, 2012, his Section 1983 claims for false arrest and false imprisonment are time-barred and are, therefore, dismissed.

Plaintiff's state-law claims for false arrest, false imprisonment, and "negligence in the performing of an arrest" are also time-barred.[7]  In New York, intentional torts such as false arrest

---

[5] Plaintiff also cites *Hargroves v. City of N.Y.*, 694 F. Supp. 2d 198, 211 (E.D.N.Y. 2010), *rev'd on other grounds*, 411 F. App'x 378 (2d Cir. 2011), and contends that if *Wallace* applies to his claims, he should receive the benefit of equitable tolling because *Wallace* brought about a change in the law.  (P's Opp. 12.)  *Hargroves* is inapposite.  The *Hargroves* plaintiffs filed their complaint prior to the issuance of the *Wallace* decision.  *See Hargroves*, 694 F. Supp. 2d at 211-12.  At that time, the law in this Circuit barred pursuit of a Section 1983 claim for false arrest "during the pendency of a criminal proceeding arising from the same transaction if the parallel [Section] 1983 case would create the distinct possibility of an inconsistent result if the prosecutor's evidence was dependent upon a valid arrest."  *Id.* at 212 (internal quotation marks omitted).  Based on then-controlling law, the *Hargroves* plaintiffs' Section 1983 false arrest claims would have been dismissed if the plaintiffs had included those claims in their original complaint, which was filed during the pendency of their criminal proceeding.  *Id.*  Accordingly, the plaintiffs filed a complaint stating Section 1983 false arrest claims within one year after their convictions were overturned.  *Id.*  By that time, *Wallace* had been decided, making the plaintiffs' claims untimely.  The court concluded that the intervening change in law occasioned by *Wallace* was the "type of extraordinary circumstance that justifie[d] equitable tolling."  *Id.* at 211.  Here, in contrast, Plaintiff's claims accrued after *Wallace* was decided and known as controlling law in this Circuit, and thus there is no intervening change in law, or other extraordinary circumstance, that would justify equitable tolling.

[6] Even if Plaintiff was not released immediately upon issuance of the tickets, Plaintiff has alleged that his arraignment occurred in June 2008, (P's Opp. 10), and thus to be timely, his Complaint must have been filed by June 2011.

[7] As "negligence in performing an arrest" is not a cognizable claim under New York law, I will consider it akin to a personal injury action sounding in negligence, as Plaintiff alleges that Hilliard improperly conducted the field sobriety tests by refusing to take into account his disabilities and thus placed him in physical peril.  (SAC 18-19.)

and false imprisonment are subject to a one-year and ninety-day statute of limitations if brought against a state actor.  *See* N.Y. Court of Claims Act § 10(3-b); N.Y. C.P.L.R. § 215(3). Negligence is governed by a three-year and ninety-day statute of limitations.  *See* N.Y. Court of Claims Act § 10(3); CPLR § 214(5).   As with a Section 1983 claim for false imprisonment, state-law false imprisonment claims accrue when the "detention ceases," *Dorto v. Novello*, 856 N.Y.S.2d 497, at *2 (Sup. Ct. 2008) (unpublished table decision), and a negligence claim such as Plaintiff's accrues on the date the injury occurs, *see Lindor v. Palisades Collection, LLC*, 914 N.Y.S.2d 867, 870-71 (Sup. Ct. 2010).  For the reasons discussed above, Plaintiff's claims accrued on May 28, 2008, and thus were time-barred by the time he filed his initial Complaint.[8]

   ii.  <u>Conspiracy</u>

Plaintiff alleges claims for conspiracy under 42 U.S.C. §§ 1981, 1983, and 1985, all of which are subject to a three-year statute of limitations.[9]  *See Harrison v. Harlem Hosp.*, 364 F. App'x 686, 688 (2d Cir. 2010) (summary order); *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001).  A plaintiff's claim for conspiracy accrues "once the plaintiff knows of the injury on which the claim is based," *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 331 (2d Cir. 1997), and a plaintiff does not need to wait until the conspiracy is terminated to bring suit, *see Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980).

Plaintiff alleges that the State Defendants conspired to arrest Plaintiff in retaliation for Plaintiff's prior lawsuit against Kroeger.  (SAC 50-52.)  The allegations contained in the SAC indicate that Plaintiff first learned about the alleged conspiracy to arrest him on May 28, 2008,

---

[8] The State Defendants also contend that Plaintiff's state-law claims for false arrest, false imprisonment, and negligence should be dismissed as time-barred because Plaintiff did not file a Notice of Claim within ninety days from the time his cause of action accrued.  *See* N.Y. Court of Claims Act § 10(3), (3-b).  I need not reach that issue because Plaintiff's claims were filed well after the applicable statutes of limitations expired and are, therefore, time-barred.

[9] Plaintiff's allegation that Hilliard conspired with the Orange County DA's Office to maliciously prosecute him, (SAC 45-48), will be discussed below.

when Vanlaningham told Hilliard that he "recognize[d] [Plaintiff's] license plate" and Plaintiff

was "the one that sued Kroeger." (*Id.* at 52.)  Plaintiff's claim for the State Defendants'

conspiracy, which accrued on May 28, 2008, is thus time-barred, as he did not file his Complaint

until approximately four years after the incident occurred.  Accordingly, Plaintiff's claims for

conspiracy against the State Defendants are dismissed.[10]

      iii.  <u>Illegal Seizure</u>[11]

The statute of limitations for an unlawful seizure is also three years, *see Mallard v.*

*Potenza*, No. 94-CV-223, 2007 WL 4198246, at *3 (E.D.N.Y. Nov. 21, 2007) (finding it a

"rather modest leap" to apply *Wallace* to other causes of action, including search and seizure

claims) (collecting cases), *aff'd*, 376 F. App'x 132, 133 (2d Cir. 2010) (summary order), *cert.*

*denied*, 131 S. Ct. 664 (2010), and the claim accrues when the plaintiff "has a complete and

present cause of action," *Spencer v. Connecticut.*, 560 F. Supp. 2d 153, 159 (D. Conn. 2008).

"[A] seizure of property occurs when 'there is some meaningful interference with an individual's

possessory interests in that property.'"  *Id.* (quoting *United States v. Jacobsen*, 466 U.S. 109, 113

(1984)).  When the "act of taking the property is complete, the seizure has ended and the Fourth

Amendment no longer applies."  *Id.* (internal quotation marks omitted).  Thus, Plaintiff's claim

accrued, and the statute of limitations began to run, on May 28, 2008, the day of the traffic stop

constituting the allegedly unlawful seizure.  As Plaintiff did not file his Complaint until almost

four years later, his claim is time-barred and must be dismissed.

---

[10] The State Defendants also contend that Plaintiff's claims for conspiracy fail to state a claim because, as employees of the same entity, the State Defendants cannot legally conspire with each other.  (State Ds' Mem. 9.)  In light of my disposition, I need not reach this issue.

[11] If Plaintiff by alleging illegal seizure intends to refer to the seizure of his person, this claim would duplicate the false arrest claim.  I will assume that he intends to refer to the seizure of property – perhaps his vehicle – upon that arrest.

iv.  First Amendment Retaliation

Plaintiff's claim for First Amendment retaliation is brought under 42 U.S.C. § 1983 and thus, as discussed above, is subject to a three-year statute of limitations.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *Shub v. Westchester Cmty. Coll.*, 556 F. Supp. 2d 227, 242 (S.D.N.Y. 2008); *Donovan v. Inc. Vill. of Malverne*, 547 F. Supp. 2d 210, 216 (E.D.N.Y. 2008).  The cause of action accrues "not when plaintiff utters the alleged protected speech, but rather when he suffers retaliatory action as a result of that speech."  *Anand v. N.Y. State Dep't of Taxation & Fin.*, No. 10-CV-5142, 2013 WL 3874425, at *14 (E.D.N.Y. July 25, 2013) (internal quotation marks omitted).  Plaintiff alleges that when the State Defendants arrested him on May 28, 2008, it was in retaliation for Plaintiff's prior lawsuit against Kroeger. (SAC 48-50, 80-81.)  Thus, Plaintiff's claim for First Amendment retaliation accrued on May 28, 2008, and is, therefore, time-barred and dismissed.

v.  ADA and NYSHRL Violation

Plaintiff asserts identical claims under the ADA and the NYSHRL arising from Hilliard's alleged failure to conduct the field sobriety tests in a "controlled environment" and a non-defendant officer's alleged decision to administer a breathalyzer rather than a blood test to gauge Plaintiff's blood alcohol level.  (SAC 42-44.)

To pursue a claim under the ADA, a plaintiff "must first assert those claims with the [Equal Employment Opportunity Commission ("EEOC")] . . . within 300 days of the allegedly discriminatory action," *Li-Lan Tsai v. Rockefeller Univ.*, 46 F. App'x 657, 658 (2d Cir. 2002) (summary order); *see* 42 U.S.C. § 2000e-5(e)(1), or the claim is time-barred, *see Davidson v. LaGrange Fire Dist.*, No. 08-CV-3036, 2012 WL 2866248, at *9 (S.D.N.Y. June 19, 2012), *aff'd*,  No. 12-CV-2825, 2013 WL 1876525 (2d Cir. May 7, 2013) (summary order).   Plaintiff

has not alleged that he filed a claim with the EEOC, and his claim may be dismissed on that basis alone.[12]  *See Kendall v. Fisse*, 149 F. App'x 19, 20 (2d Cir. 2005) (summary order) (affirming dismissal of ADA claim where plaintiff failed to file EEOC charge within 300 days of the alleged discriminatory act).  Because Plaintiff is *pro se*, however, in an excess of caution I will assume for the purposes of this motion that Plaintiff filed a claim with the EEOC within the allotted time.

The ADA does not contain a statute of limitations and thus "courts look to analogous state law to determine the appropriate limitations period."  *Gardner v. Wansart*, No. 05-CV-3351, 2006 WL 2742043, at *3 (S.D.N.Y. Sept. 26, 2006).  In determining the applicable time constraints for claims brought pursuant to the ADA, "courts in this district apply New York's three-year statute of limitations for personal injury claims."  *Id.*  Likewise, NYSHRL Section 296 has a three-year statute of limitations.  *See Odom v. Doar*, 497 F. App'x 88, 89 (2d Cir. 2012) (summary order).  As with Section 1983 claims, the statute of limitations accrues when Plaintiff "knew or had reason to know of the injury serving as the basis for his claim."  *Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir. 1999); *see Damino v. City of N.Y.*, No. 99-CV-3638, 2004 WL 2032515, at *4 (E.D.N.Y. Sept. 13, 2004) (statute of limitations for Section 1983 and NYSHRL claims is three years).

Plaintiff "knew or had reason to know" that Hilliard had allegedly violated the ADA and the NYSHRL when Hilliard conducted the field sobriety test and when the non-defendant officer

---

[12] In his opposition, Plaintiff failed to address the State Defendants' argument that his ADA claim was time-barred. Accordingly, I may also dismiss this claim based on Plaintiff's abandonment.  *See Martinez v. City of N.Y.*, No. 11-CV-7461, 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (quoting *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)); *Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (report and recommendation) (collecting cases). Because Plaintiff is *pro se*, however, I will overlook his failure to oppose the State Defendants' contention, and I will address the ADA claim.

administered the breathalyzer on May 28, 2008, yet Plaintiff did not file his Complaint until approximately four years later. Accordingly, Plaintiff's claims for discrimination under the ADA and the NYSHRL are time-barred and dismissed.

      b.  <u>Right of Access to Courts</u>

The right of access to courts stems from "the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Ponterio v. Kaye*, No. 06-CV-6289, 2007 WL 1029901, at *1 (S.D.N.Y. Apr. 5, 2007) (internal quotation marks omitted). "Denial of access" claims are generally brought pursuant to one of two theories. *Id.* First, a plaintiff may claim that "systemic official action frustrate[d]" his efforts to prepare and file a lawsuit. *Id.* (internal quotation marks omitted). For example, "prisoners have sued for access to a law library, [] or indigent plaintiffs have sued for waivers of filing fees." *Id.* (internal quotation marks omitted). Second, a plaintiff may allege that his ability to file a lawsuit has been "irrevocably lost," generally because of "a massive governmental cover-up denying plaintiffs the ability to gather evidence." *Id.*

Plaintiff's theory here appears to be that his right of access to the courts was thwarted because he was arrested in retaliation for having exercised that right by suing Kroeger. (*See* P's Opp. 22 (citing *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422 (8th Cir. 1986) (access to courts impaired if individual threatened or harassed in retaliation for filing lawsuit)).) In the Second Circuit such a claim would be construed as a First Amendment retaliation claim, *see, e.g.*, *Greenwich Citizens Comm., Inc. v. Cntys. of Warren & Wash. Indus. Dev. Agency*, 77 F.3d 28, 31 (2d Cir. 1996) (citing *Harrison* in discussing First Amendment retaliation); *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 341-42 (E.D.N.Y. 2010) (same);

*Glenview Constr., Inc. v. Bucci*, 165 F. Supp. 2d 545, 552 (S.D.N.Y. 2001) (same), and for the reasons stated above would be barred by the statute of limitations.  Even construed as a denial of access to the courts, however, the statute of limitations would be a bar for the same reasons.  Plaintiff was aware on May 28, 2008 of all of the facts underlying his claim – his arrest and Vanlaningham's comment regarding his suit against Kroeger – so the claim accrued on that date and was time-barred by the time he filed his initial Complaint.

Further, to state a denial of access claim, a plaintiff must allege that a defendant "caused 'actual injury,' *i.e.*, took or was responsible for actions that 'hindered a plaintiff's efforts to pursue a legal claim.'"  *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (alteration and internal citation omitted) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *see Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss a plaintiff must allege . . . that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").  Plaintiff fails to allege any facts suggesting that the State Defendants did anything that "hindered [his] efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.  Plaintiff litigated the lawsuit against Kroeger to conclusion, (*see Peterec v. Kroeger*, No. 08-CV-1626, Doc. 26),[13] filed the instant lawsuit, and does not identify any other legal claim he was hindered in pursuing.  He thus has failed to allege any "actual injury" (*i.e.*, actions that hindered his ability to file a legal claim). *Lewis*, 518 U.S. at 351.

Accordingly, Plaintiff's claim that the State Defendants violated his right of access to courts is dismissed.

---

[13] I may take judicial notice of public records such as court dockets.  *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205 n.4 (2d Cir. 2012); *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

c.   False Reporting of an Incident

Plaintiff contends that Hilliard's incident report contained false statements in violation of New York Penal Law § 240-50(3).  (SAC 54.)  This claim must fail because "private citizens do not have a private cause of action for criminal violations."  *Alexander v. Tyson*, No. 11-CV-710, 2013 WL 1798896, at *2 n.2 (D. Conn. Apr. 29, 2013).  Plaintiff's claim is accordingly dismissed.

d.   Malicious Prosecution

To prevail on a claim for malicious prosecution under Section 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York law.  *See Manganiello v. City of N.Y.*, 612 F.3d 149, 160-61 (2d Cir. 2010); *Perez v. Duran*, No. 11-CV-5399, 2013 WL 3357166, at *6 (S.D.N.Y. July 3, 2013).  A claim for malicious prosecution under New York law requires a plaintiff to prove:  "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Manganiello*, 612 F.3d at 161 (internal quotation marks omitted).  A claim for malicious prosecution under Section 1983 also requires that the plaintiff establish "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).   The State Defendants advance two arguments with respect to Plaintiff's claims for malicious prosecution.  First, they argue that there was probable cause for the criminal proceeding because Plaintiff failed a breathalyzer test.  (State Ds' Mem. 11.)  Second, they contend that Plaintiff has failed to allege that he suffered any post-arraignment deprivation of liberty.  (*Id.* at 11-12.)

i.   <u>Probable Cause</u>

An officer has probable cause to arrest if he has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). Probable cause to prosecute is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Jackson v. City of N.Y.*, No. 10-CV-2530, 2013 WL 1622165, at *8 (E.D.N.Y. Apr. 16, 2013) (internal quotation marks omitted). Whether probable cause exists "must be determined with reference to the facts of each case . . . and to the totality of circumstances." *Manganiello*, 612 F.3d at 161.

The State Defendants are correct that probable cause is assessed "at a different point in time in a malicious prosecution action than a false arrest action where the prosecution follows a warrantless arrest." *Jackson*, 2013 WL 1622165, at *8 (internal quotation marks omitted). Information obtained by the defendant "after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause" for malicious prosecution claims in such circumstances. *Id.* (internal quotation marks omitted); *see Peterson v. Regina*, No. 10-CV-1692, 2013 WL 1294594, at *10 (S.D.N.Y. Mar. 28, 2013) (probable cause for malicious prosecution claim is assessed at time judicial proceeding commenced, not at time of warrantless arrest). Thus, even if there were no probable cause at the time of arrest, a valid intervening breathalyzer test could supply the necessary probable cause to support the initiation of the prosecution.

The problem for Hilliard here, however, is that – if Plaintiff's version of events is believed, as it must be at this stage – the breathalyzer followed an invalid arrest.  Plaintiff asserts that Hilliard falsely alleged that he smelled alcohol on Plaintiff, that Plaintiff stated that he had "two beers in New York City," and that Plaintiff failed the field sobriety tests, (SAC 16, 20; *see id.* Ex. 2), which formed the basis for Hilliard's decision to take Plaintiff into custody and order a breathalyzer test.  Assuming the truth of Plaintiff's allegations and drawing all reasonable inferences in Plaintiff's favor, as I must do at this stage, *see Cruz v. City of N.Y.*, No. 08-CV-8640, 2010 WL 3020602, at *6 (S.D.N.Y. July 27, 2010), I find that Plaintiff has plausibly alleged that Hilliard lacked probable cause to arrest Plaintiff.  If indeed Hilliard knowingly arrested Plaintiff without probable cause, the breathalyzer results could be fruit of the poisonous tree.  *See Clynch v. Chapman*, 285 F. Supp. 2d 213, 228-29 (D. Conn. 2003).  In that event, Hilliard's initiation of the prosecution, knowing the arrest was invalid and that the breathalyzer results were not admissible, plausibly lacked probable cause.

ii.  <u>Post-Arraignment Liberty Restraint</u>

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person – *i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty."  *Rohman*, 215 F.3d at 215.  Thus, a plaintiff pursuing a claim for malicious prosecution under Section 1983 "must show that the seizure resulted from the initiation or pendency of judicial proceedings."  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).

Plaintiff asserts that "a party is seized for so long as a prosecution is pending."  (P's Opp. 21 (citing *Singer v. Fulton City Sheriff*, 63 F.3d 110 (2d Cir. 1995)).)  *Singer*, however, noted that to state a claim for malicious prosecution under Section 1983, the seizure "must have been

effected pursuant to legal process," which will generally either be "in the form of a warrant, in which case the arrest itself may constitute the seizure, or a subsequent arraignment, in which case any post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement." *Singer*, 63 F.3d at 117 (internal citation and quotation marks omitted). Plaintiff's arrest, which occurred without a warrant, (*see* SAC 21), was not "'pursuant to legal process'" and thus "cannot serve as the predicate deprivation of liberty," *Singer*, 63 F.3d at 117 (quoting *Heck*, 512 U.S. at 484).[14] Plaintiff has, however, alleged – albeit barely – that he was subject to a post-arraignment liberty restraint, as the Second Circuit has held that "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (alterations and internal quotation marks omitted); *see Rohman*, 215 F.3d at 216 (seizure occurred where plaintiff was required to appear in court on five occasions and "render himself at all times amenable to the orders and processes of the court") (internal quotation marks omitted); *Murphy*, 118 F.3d at 946 (restrictions on out-of-state travel for arraigned defendant and his required appearances in court amounted to Fourth Amendment seizure). Although Plaintiff does not allege that he was required to post bail or subject to any restrictions on out-of-state travel, he does indicate that he was subject to at least one court appearance and plausibly more, as he stated that the ADAs announced that they were ready for trial "throughout" the three years that his criminal charges were pending.[15] (SAC 40.)

---

[14] Plaintiff also cites *Hall v. Ochs*, 817 F.2d 920 (1st Cir. 1987) to support his contention that he established a sufficient post-arraignment deprivation of liberty. (P's Opp. 21.) *Hall* is inapposite, however, as the case did not concern whether a post-arraignment liberty restraint had occurred. Rather, the issue was whether the defendant, a police officer, should receive qualified immunity for confining the plaintiff in prison until he agreed to forfeit the right to sue the police. *Hall*, 817 F.2d at 924-25. Although the confinement was correctly deemed a seizure, it does nothing to support Plaintiff's contention that a seizure occurs throughout the pendency of a prosecution.

[15] *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010), suggested that "[t]he number of [court] appearances may bear upon whether there was a seizure." Although the *Swartz* court found that *Burg*'s reasoning was questionable, it did note that if the "multiple [court] appearances were for the arrestee's convenience" then perhaps *Burg*'s reasoning

As Plaintiff has plausibly pleaded that he was subjected to a post-arraignment liberty restraint, and the State Defendants do not dispute that the proceedings terminated in his favor or that he has plausibly alleged actual malice, both his Section 1983 and state-law claims against Hilliard for malicious prosecution survive the State Defendant's Motion to Dismiss.

2. <u>Claims Against Orange County</u>

Plaintiff also asserts several state and federal causes of action against Orange County, including:

- 42 U.S.C. §§ 1981, 1983, and 1985 Conspiracy
- 42 U.S.C. § 1983 and state-law False Arrest and False Imprisonment
- 42 U.S.C. § 1983 and state-law Malicious Prosecution
- 42 U.S.C. § 1983 Negligent Hiring and Retention
- 42 U.S.C. § 1983 Abuse of Criminal Process

(SAC 45, 55-79.)  For the reasons stated above in connection with the State Defendants, Plaintiff's 42 U.S.C. § 1983 and state-law claims for false arrest and false imprisonment are dismissed.

a. *Monell* <u>Liability</u>

Plaintiff argues that Orange County should be liable for the constitutional violations of its employees.  Municipal liability under Section 1983 requires proof that a particular constitutional or statutory violation was the result of an official policy:

> [A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under [Section] 1983.

---

would carry some weight.  *Swartz*, 704 F.3d at 112.  If, on summary judgment, it is clear that the case was prolonged for Plaintiff's convenience – which Plaintiff suggests by indicating that the ADAs stated that they were ready for trial as of his June 2008 arraignment – then I may reexamine whether Plaintiff actually suffered any post-arraignment deprivation of liberty.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The Second Circuit has established a

two-pronged test that a plaintiff must satisfy before recovering from a municipality under

Section 1983.  *See Moray v. Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).  First, a plaintiff must

"prove the existence of a municipal policy or custom" that caused his injuries to show that the

municipality took some action beyond merely employing the misbehaving officers.  *Vippolis v.*

*Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).  Second, the plaintiff must establish a causal

connection between the policy and the alleged civil rights violation.  *Id.*

　　　To satisfy the first prong on a motion to dismiss, Plaintiff must allege the existence of

one of the following:

> "(1) a formal policy which is officially endorsed by the municipality; (2)
> actions taken or decisions made by government officials responsible for
> establishing municipal policies which caused the alleged violation of the
> plaintiff's civil rights; (3) a practice so persistent and widespread that it
> constitutes a 'custom or usage' and implies the constructive knowledge of
> policy-making officials; or (4) a failure by official policy-makers to
> properly train or supervise subordinates to such an extent that it amounts
> to deliberate indifference to the rights of those with whom municipal
> employees will come into contact."

*Moray*, 924 F. Supp. at 12 (internal citations and quotation marks omitted).

　　　Plaintiff's *Monell* claim against Orange County arises from the County's alleged failure

to train its employees, as evidenced by Reis's and Orofry's alleged prolonged frivolous

prosecution of Plaintiff.  (SAC 55-58, 73-77.)  The Supreme Court has stated that "[a]

municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  As stated above, only

where a Plaintiff can demonstrate that a municipality's failure to train "amounts to deliberate

indifference to the rights of those with whom municipal employees will come into contact" will a

policy or custom that is actionable under Section 1983 be established.  *Moray*, 924 F. Supp. at 12 (internal quotation marks omitted); *see Connick*, 131 S. Ct. at 1359-60.

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  To establish deliberate indifference, a plaintiff must demonstrate that:  (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training . . . will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal quotation marks omitted).

Plaintiff contends that the "repeated civil rights lawsuits against the County of Orange and the Orange County [DA]" should have put Orange County on notice of the alleged constitutional violations.  (SAC 59; P's Opp. 25.)    Only one of the cases Plaintiff cites, however, contains a cause of action arising from the DA's failure to train its employees, and that case can be readily distinguished.  (OC Reply 4.)[16]  *See Connick*, 131 S. Ct. at 1360 (proof that four convictions were overturned because of *Brady* violations still not sufficient to put

---

[16] "OC Repl." refers to the Memorandum of Law in Further Support of the County of Orange's Motion to Dismiss. (Doc. 53.)

Plaintiff contends that the allegations contained in *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998), should have put Orange County on notice that its employees repeatedly violated citizens' constitutional rights.  (P's Opp. 25.)  In *Myers*, however, the plaintiff alleged that Orange County failed to train its employees to handle cases involving cross-complaints, and that its policy not to accept cross-complaints in certain instances was unconstitutional.  *Myers*, 157 F.3d at 69.  Here, Plaintiff seems to be alleging that Orange County's failure to train its employees regarding probable cause resulted in the ADAs' prolonged, frivolous prosecution of him.  (SAC 57, 62.)  *Myers*, related to cross-complaints, could not have put Orange County on notice that its training with respect to probable cause was deficient.

municipality on notice that its training was inadequate as to specific type of *Brady* violation plaintiff alleged).

Plaintiff has not adduced any other evidence to demonstrate that a pattern of similar constitutional violations exists, and instead, merely relies on conclusory allegations that the ADAs' actions could only be the product of an Orange County policy or custom.  (*See* SAC 56-57 ("The obviousness of there being a clear cut custom and policy is that not one but two [ADAs] from Orange County separately engaged and persisted in prolonged frivolous prosecutions [of] the same case. . . .").)[17]  Such conclusory allegations, however, are insufficient to withstand a motion to dismiss.  *See Keitt v. New York City*, 882 F. Supp. 2d 412, 433 (S.D.N.Y. 2011) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (alteration and internal quotation marks omitted); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *4 (S.D.N.Y. Feb. 15, 2011) (complaint that "contain[ed] only an unsupported conclusory allegation that the City failed to train the individual Defendants" could not withstand motion to dismiss because plaintiff did not plead any facts that "plausibly allege[d] a specific deficiency in the training or supervision program") (internal quotation marks omitted).  Finally, even if Plaintiff's is correct that the ADAs should have recognized that the charges against him were frivolous, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making

---

[17] Plaintiff's contention that both Reis and Onofry pursued a frivolous prosecution against him does not support an inference that their decisions resulted from Orange County's failure to train its ADAs.  *See Simms v. City of N.Y.*, 480 F. App'x 627, 630-31 (2d Cir. 2012) (plaintiff's allegation that he was falsely arrested and maliciously prosecuted twice within only a few months was insufficient to support an inference that it was a result of the City's failure to train its officers); *see also Connick*, 131 S. Ct. at 1360 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates.") (alteration and internal quotation marks omitted).

level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks omitted).

Accordingly, Plaintiff's *Monell* theory fails, and the Section 1983 claims against Orange County must be dismissed.  There are independent reasons for dismissal of those claims as well, as discussed below.

  b. <u>Conspiracy</u>

Plaintiff alleges that Hilliard conspired with ADAs Reis and Onofry to maliciously prosecute him in violation of 42 U.S.C. §§ 1981, 1983, and 1985.  (SAC 45-48.)  In support of his claim, Plaintiff merely alleges that Hilliard had "direct communications" with the ADAs. (*Id.* at 46-47.)  To survive a motion to dismiss a claim for conspiracy to violate Section 1983, a plaintiff must show:  "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 465 (2012) (internal quotation marks omitted).  Although "conspiracies are by their very nature secretive operations" that "may have to be proven by circumstantial, rather than direct, evidence," conclusory allegations of a conspiracy are insufficient. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (internal quotation marks omitted).  Indeed, the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.

Plaintiff's claims for conspiracy under Section 1983 must fail.  Plaintiff has not alleged any facts that plausibly suggest Hilliard engaged in a conspiracy with any Orange County employee.  Plaintiff's sole conclusory and unsupported allegation that Hilliard had "direct communications" with ADAs Reis and Onefry is insufficient to demonstrate that any agreement

to conspire against Plaintiff was reached.  *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (alteration and internal quotation marks omitted); *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (to withstand motion to dismiss, "plaintiff must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end" as well as "some details of time and place and the alleged effects of the conspiracy") (internal quotation marks omitted); *Aziz Zariff Shabazz v. Pico*, 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (holding that mere allegation of conspiracy without any facts to support it cannot withstand a motion to dismiss).  Plaintiff has presented no facts suggesting either a conspiratorial agreement or a motive for the same on the part of the ADAs or any other Orange County employee.

Plaintiff's claim for conspiracy under Sections 1981 and 1985 must also fail.  Like a Section 1983 conspiracy, "to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds," which Plaintiff has failed to do.  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted).  Furthermore, Plaintiff has not alleged that he is a racial minority or that he suffered from any racial or class-based animus.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (to state a claim under Section 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) ("To establish a claim under [Section] 1981, a plaintiff must allege facts in support of the following elements:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the

25

discrimination concerned one or more of the activities enumerated in the statute. . . ."); *Gleason v. McBride*, 869 F.2d 688, 694-95 (2d Cir. 1989) (to state a Section 1985 claim, plaintiff must "allege that he was a member of a protected class, that the defendants conspired to deprive him of his constitutional rights, that the defendants acted with class-based, invidiously discriminatory animus, and that he suffered damages as a result of the defendant's actions") (citing 42 U.S.C. § 1985(2), (3)).

Accordingly, Plaintiff's claims for conspiracy against Hilliard and Orange County under 42 U.S.C. §§ 1981, 1983, and 1985 are dismissed.

    c.  <u>Malicious Prosecution</u>

Plaintiff's federal and state-law claims for malicious prosecution against Orange County must fail, as Plaintiff has failed to allege "actual malice" on the part of any Orange County employee.  Although a lack of probable cause *may* allow an inference of malice, *see King v. City of N.Y.*, No. 12-CV-2344, 2013 WL 2285197, at *7 (E.D.N.Y. May 23, 2013), such an inference is not warranted here, where Plaintiff has not alleged any facts suggesting that the ADAs knew or should have known that the information contained in Hilliard's supporting deposition, *see* SAC Ex. B, was false.  Further, Plaintiff has not set forth any facts establishing that anyone at the Orange County DA's office had an "improper motive" or anything other than the "desire to see the ends of justice served."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotation marks omitted).  Indeed, Plaintiff merely alleges that the ADAs had "direct communications" with Hilliard.  (SAC 47.)  He provides no facts suggesting that there was anything in those communications that would have alerted the ADAs to any lack of probable cause against Plaintiff.  He has thus failed to allege facts plausibly suggesting that the ADAs

were acting with "actual malice."  Plaintiff's Section 1983 and state-law claims for malicious

prosecution against Orange County are thus dismissed.

> d.  <u>Negligent Hiring and Retention</u>

Plaintiff alleges a claim for negligent hiring and retention under Section 1983 based on

ADAs Reis's and Onofry's pursuit of a frivolous case against him.  As a preliminary matter,

there is no cognizable claim for negligent hiring and retention pursuant to Section 1983.  As

Plaintiff is *pro se*, however, I will construe his claim as one brought under New York law.

Plaintiff's claim for negligent hiring and retention should be dismissed because the SAC

fails to plausibly allege the cause of action.[18]  Under New York law, a claim for negligent hiring

or retention "can only proceed against an employer for an employee acting outside the scope of

her employment."  *Newton v. City of N.Y.*, 681 F. Supp. 2d 473, 488 (S.D.N.Y. 2010) (internal

quotation marks omitted); *see Gray v. Schenectady City Sch. Dist.*, 927 N.Y.S.2d 442, 445-46

(App. Div. 2011).  If an employee is acting within the scope of her employment, "the employer

could only be liable, if at all, vicariously under the theory of *respondeat superior*, not for

negligent supervision or retention."  *Gray*, 927 N.Y.S.2d at 446; *see Coville v. Ryder Truck*

---

[18] As an initial matter, Orange County contends that Plaintiff's claim should be dismissed as time-barred.  (OC Memorandum of Law in Support of the County of Orange's Motion to Dismiss ("OC Mem."), (Doc. 33), 10.) Orange County asserts that prior to filing his lawsuit against it, Plaintiff was required to serve Orange County with a Notice of Claim within ninety days from the time his cause of action accrued, *see* N.Y. Gen. Mun. Law § 50-e(1)(a), and that Plaintiff did not file his Notice of Claim until July 20, 2011.  Furthermore, New York's General Municipal Law provides a one-year and ninety day statute of limitations for civil actions maintained against a county.  *See id.* § 50-i(1).

Plaintiff contends that Orange County was negligent in hiring and retaining ADAs Reis and Onofry because they pursued a frivolous case against Plaintiff despite knowing that the charges against him were not supported by reliable evidence.  (SAC 66-67.)  Plaintiff further alleges that Reis submitted an affidavit containing false information.  (*Id.* at 68.)  According to Plaintiff, the ADAs were ready for trial beginning in June 2008, and thus Plaintiff became aware at that time that the ADAs were going to pursue a criminal proceeding against him despite their alleged knowledge that Hilliard did not have probable cause for Plaintiff's arrest.

Because Plaintiff did not commence his lawsuit until May 16, 2012, well past the one-year and ninety day statute of limitations, Plaintiff's claim for negligent hiring and retention should be dismissed as time-barred, and I need not address the notice-of-claim issue.  I address the plausibility of the claim in an excess of caution.  (Even if Plaintiff were to argue that he did not know the ADAs had been negligently hired until Reis filed the affidavit (which he has not), he does not allege that that affidavit was filed within one year and ninety days of his filing of the Complaint.)

*Rental, Inc.*, 817 N.Y.S.2d 179, 180 (App. Div. 2006) ("Where an employee is acting within the scope of his or her employment, the employer is liable under the theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention.") (alteration and internal quotation marks omitted). Plaintiff, however, cannot demonstrate that Reis and Onofry were acting outside the scope of their employment when they handled his prosecution. Moreover, even if Plaintiff could demonstrate that the ADAs were acting outside the scope of their employment, he has set forth no facts plausibly showing that Orange County knew of its employees' propensity to take the alleged actions causing the injury or should have known the same had its hiring procedures been adequate. *See Newton*, 681 F. Supp. 2d at 488; *Honohan v. Martin's Food of S. Burlington Inc.*, 679 N.Y.S.2d 478, 479 (App. Div. 1998).

Accordingly, Plaintiff's claim for negligent hiring and retention is dismissed.

e.   Abuse of Criminal Process

Finally, Plaintiff alleges a claim of abuse of process under 42 U.S.C. § 1983. (SAC 79.) To make out a claim for malicious abuse of process under Section 1983, a plaintiff must plausibly allege that he was denied a federal right. *See Peter L. Hoffman, Lotte, LLC v. Town of Southhampton*, No. 12-CV-4357, 2013 WL 1789271, at *1 (2d Cir. Apr. 29, 2013) (summary order). Although Plaintiff has not specified the deprivation of any federal right, the Second Circuit has held that "where the process alleged to have been abused is criminal in nature, an adequately ple[a]d[ed] claim for malicious abuse of process is 'by definition a denial of procedural due process.'" *Id.* (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

Federal courts look to state law to determine the elements of an abuse of process claim. *See Cook*, 41 F.3d at 80. In New York, a malicious abuse of process claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or

forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.*, 331 F.3d 63, 70 (2d Cir. 2003) (alteration and internal quotation marks omitted). Orange County contends that Plaintiff's abuse of process claim should be dismissed because he has failed to allege any of the necessary elements establishing this cause of action. (OC Mem. 14.)

To plead a collateral objective, a plaintiff must plausibly plead "not that defendant acted with an improper motive, but rather an improper purpose – that is, 'he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" *Douglas v. City of N.Y.*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009) (quoting *Savino*, 331 F.3d at 77). Plaintiff does not explicitly allege any improper purpose, and the only collateral motive he could conceivably plead based on the facts contained in the SAC would be that Orange County pursued criminal charges against him in retaliation for his prior lawsuit against Kroeger (although even that allegation would be implausible, given that Kroeger has no connection to the Orange County DA's office and the events at issue in that case arose in Sullivan County). "Neither retaliation nor a malicious motive, however, is a sufficient collateral objective to satisfy that element of a cognizable malicious abuse of process claim." *Peter L. Hoffman*, 2013 WL 1789271, at *2; *see Savino*, 331 F.3d at 77 ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process.") (alteration and internal quotation marks omitted). Moreover, Plaintiff has alleged neither that Orange County issued legal process to compel or prevent him from performing an act nor that Orange County had any intent to do harm. As Plaintiff has failed to plausibly plead any of the elements of abuse of criminal process, his claim must be dismissed.

D. *Leave to Amend*

Although *pro se* plaintiffs are generally given leave to amend a deficient complaint, *see Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (per curiam), a district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  While courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, *see In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008), leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim, *see Valle v. Police Dep't Cnty. of Suffolk Cent. Records*, No. 10-CV-2847, 2010 WL 3958432, at *2 (E.D.N.Y. Oct. 7, 2010).  I find that to be the case here.  Further, Plaintiff has not indicated that he is in possession of facts that could cure the deficiencies identified in this Opinion.  Thus, because Plaintiff has already had two opportunities to amend his Complaint, and because it appears to the Court that amendment would be futile, I decline to *sua sponte* grant leave to amend again.  *See Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (summary order) (denial of leave to amend affirmed where *pro se* plaintiff had already had opportunity to amend once and made no specific showing as to how he would remedy defects in complaint); *cf. Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277 F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (district court did not exceed its discretion in not *sua sponte* granting leave to amend where Plaintiff had already amended complaint once and amendment would have been futile).

## III.  <u>Conclusion</u>

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART.  All claims are dismissed except for the federal and state-law claims for

malicious prosecution against Hilliard.  The Clerk of Court is respectfully directed to terminate

John Vanlaningham and the County of Orange as Defendants and to terminate the pending

Motions, (Docs. 32, 35).  The remaining parties are to appear for a status conference on **October**

**8, 2013 at 2:45 p.m.**

**SO ORDERED.**

Dated: September 16, 2013
         White Plains, New York

CATHY SEIBEL, U.S.D.J.