UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
JOHN L. PETEREC,

                               Plaintiff,

      − against −                                     **OPINION AND ORDER**

NEW YORK STATE POLICE TROOPER SCOTT D.         No. 12-CV-3944 (CS)
HILLIARD, in his individual capacity,

                               Defendant.
-------------------------------------------------------------------------x

Appearances:

John L. Peterec
New York, New York
*Plaintiff* Pro Se

John E. Knudsen
Assistant Attorney General of the State of New York
New York, New York
*Counsel for Defendant*

Seibel, J.

       Before the Court are Defendant's Motion for Summary Judgment, (Doc. 82), Plaintiff's Motion for Summary Judgment, (Doc. 74), and Plaintiff's Motion in Limine, (Doc. 73). For the following reasons, Defendant's Motion is GRANTED and Plaintiff's Motions are DENIED.

## I.    BACKGROUND

       The following facts are based upon the parties' Local Civil Rule 56.1 statements and supporting materials, and are undisputed except as noted. I set forth only those facts relevant to my decision.

Defendant is a Trooper with the New York State Police. (Knudsen Decl. Ex. A ("D's Aff."), at ¶ 1.)[1] On May 28, 2008, at approximately 8:00 pm, Defendant received a radio transmission from the State Police Barracks in Monroe, New York seeking an available patrol unit on State Route 17 westbound. (*Id.* ¶ 2.) Defendant, who was assigned to a construction zone detail on State Route 17, answered this transmission and spoke with Trooper Jason Coulon. (*Id.*) Trooper Coulon notified Defendant that an off-duty Trooper was following a green Toyota that was driving erratically and was approaching the construction zone on State Route 17. (*Id.*)

According to Defendant, the following occurred: At about 8:25 pm, he observed the green Toyota and noticed that the passenger side headlight was out. (*Id.* ¶ 3.) Defendant then stopped the vehicle and asked Plaintiff, who was driving it, for his license and registration. (*Id.*) When speaking with Plaintiff, Defendant immediately detected an odor of alcohol on his breath, and noticed that Plaintiff had red, watery eyes. (*Id.*) Defendant asked Plaintiff how much he had had to drink, and Plaintiff admitted that he drank two beers earlier in the day. (*Id.*) Defendant then asked Plaintiff to exit his vehicle. (*Id.* ¶ 4.) When Plaintiff exited his vehicle, Defendant noticed a container of yellow liquid on the floor in front of the driver's seat and that Plaintiff's fly was open. (*Id.*) In response to Defendant's question as to what was in the container, Plaintiff stated that it was urine. (*Id.*) Defendant then frisked Plaintiff and conducted field sobriety tests. (*Id.* ¶¶ 4-5.) Before each field sobriety test, Plaintiff objected that he was too tired to perform what was requested of him. (*Id.* ¶ 5.) Due to Plaintiff's complaint of a "crooked back," Defendant did not require Plaintiff to perform two of the field sobriety tests – the walk and turn and the one leg stand tests. (*Id.*) Plaintiff failed the other five field sobriety tests – horizontal gaze nystagmus, Romberg balance, finger to nose, finger count, and reciting the alphabet. (*Id.*;

---

[1] "Knudsen Decl." refers to Declaration of John Knudsen. (Doc. 84.)

Knudsen Decl. Ex. D, at 3.) Defendant then arrested Plaintiff and brought him to the Monroe State Police Barracks. (D's Aff. ¶ 5.)

Plaintiff disputes much of Defendant's account. First, Plaintiff argues that Defendant could not have seen a nonfunctioning headlight, because both of his car's headlights were working and, even if a headlight was out, that would not have justified the traffic stop because the sun had not yet set. (P's 56.1 ¶ 2.)[2] Second, according to Plaintiff, Defendant could not have detected any odor of alcohol on Plaintiff's breath, because he did not have anything to drink that day, and his car window did not go down far enough for Defendant to have been exposed to Plaintiff's breath before Plaintiff got out of the car. (*Id.* ¶¶ 3-4.) Plaintiff testified, however, that Defendant opened the car door to talk to Plaintiff after Plaintiff told him that the window was broken. (P's Opp. Ex. 8, at 41.)[3] Third, Plaintiff states that Defendant could not have heard Plaintiff admit that he had two beers, because Plaintiff never admitted to drinking alcohol that day. (P's 56.1 ¶ 4.) Fourth, Plaintiff says his eyes were not red and watery, and his speech was not slurred. (*Id.* ¶ 12.) Fifth, according to Plaintiff, he did not fail any field sobriety test, because he refused to perform any such test. (*Id.* ¶ 5.)[4] Plaintiff, however, admitted in his deposition that he was unsteady on his feet after exiting his car, but claims "divots" on the ground caused his unsteadiness. (Knudsen Decl. Ex. C, at 43.) Finally, Plaintiff avers that the container of yellow liquid was wonton soup, not urine, and that he never said it was urine, (P's 56.1 ¶ 3), although he does not deny that his fly was open.

---

[2] "P's 56.1" refers to Plaintiff's Statement Pursuant to Rule 56. (Doc. 76.)

[3] "P's Opp." refers to Memorandum of Law to Deny Trooper Defendant's Motion for Summary Judgment. (Doc. 79.)

[4] This statement contradicts statements Plaintiff made to the Monroe Town Court in a Motion to Suppress Results of Field Sobriety Test. (*See* Supplemental Declaration of John Knudsen, (Doc. 87), Ex. A, at 8-10, 18-20.)

3

The events at the State Police Barracks are not in dispute. There, another Trooper, Douglas Tinirello, administered a breathalyzer test. (D's Aff. ¶ 6; *see* Knudsen Decl. Ex. D, at 2.) The test indicated that Plaintiff had a blood alcohol content ("BAC") of .08 percent. (D's Aff. ¶ 6.) Plaintiff argues that the breathalyzer results were unreliable, and that Defendant knew they were unreliable, for the following reasons: "a) The calibrations were way off. b) Me informing him that [asthma] medications cause false positives for Breathalyzers, thus I required my blood drawn which he refused. c) Fact that the machine couldn't have been properly working as it never printed out from its internal printer[, which produces] the ONLY reliable verifiable result that can be certified as true, as any 8 ½ by 11 print out externally can be deemed false by alteration." (P's 56.1 ¶ 7.) After receiving the results of the breathalyzer test, Defendant gave Plaintiff misdemeanor tickets for driving with a BAC of .08 percent or more, and driving while intoxicated, in violation of N.Y. Vehicle & Traffic Law ("VTL") §§ 1192(2) and (3), respectively, and a traffic infraction ticket for not having two functioning headlights, in violation of VTL § 375(2)(a)-1. (D's Aff. ¶ 6; Knudsen Decl. Ex. D, at 4-6.)

Plaintiff filed this action on May 16, 2012, asserting several state and federal claims against several individuals, Orange County and the Orange County District Attorney. On September 16, 2013, the Court granted motions to dismiss as to all claims except for the state and Section 1983 malicious prosecution claims against Defendant. (*See* Doc. 56.) Plaintiff and Defendant both now move for summary judgment on these claims. (Docs. 74, 82.)[5]

---

[5] Plaintiff also submitted a "Motion in Limine – To Bar Any References to Plaintiff's Arrest, i.e.: Field Sobriety Tests, and Breath Machines Unsupported Documentation Readings, etc." ("P's Motion in Limine," (Doc. 73).) I have considered the arguments set forth in this document to the extent they are relevant to the dueling summary judgment motions.

## II.     DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, and, if satisfied, the burden then shifts to the non-movant to present evidence sufficient to satisfy every element of the claim. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

5

those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A).  Where, as here, affidavits are used to support or oppose the motion, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Because Plaintiff is proceeding *pro se*, the Court must read his papers liberally and construe them "to raise the strongest arguments that they suggest."  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).[6]  Nevertheless, "when confronted with evidence of facts that would support [the opposing party's motion for] summary judgment, the [*pro se*] plaintiff must come forward with evidence in admissible form that is

---

[6] Pursuant to Local Civil Rule 56.2, Defendant was required to send Plaintiff a "Notice To *Pro Se* Litigant Who Opposes a Motion for Summary Judgment."  The Notice informs *pro se* litigants that their case may be dismissed if they do not submit a timely opposition to a summary judgment motion and that they must submit evidence to contradict factual averments made by the moving party.

Despite the clear dictates of Local Civil Rule 56.2, Defendant failed to send such a notice to Plaintiff.  (*See* Memorandum of Law to Deny Trooper Defendant's Motion for Summary Judgment, ("P's Opp."), (Doc. 79), at 4-5.)  "[T]he failure of a litigant who moves for summary judgment to provide a *pro se* party with notice of the requirements of [Fed. R. Civ. P. 56] will result in [denial] of the [motion for] summary judgment, no matter how meritorious, unless the movant shows (or it is obvious to the court) that the *pro se* was aware of this rule's requirements."  *Ortiz-Alvear v. United States*, 21 F. App'x 27, 28 (2d Cir. 2001) (summary order) (internal quotation marks and alterations omitted).   Where, as here, the *pro se* litigant submits "extensive documentation . . . [and] conten[ds] that issues of material fact properly resolved by a jury should prevent entry of summary judgment against him," it is obvious that the *pro se* litigant "understood the nature and consequences of summary judgment," and the failure to send the Local Civil Rule 56.2 Notice is harmless.  *Hafez v. City of Schenectady*, 524 F. App'x 742, 743 (2d Cir. 2013) (summary order).  Indeed, that Plaintiff pointed out Defendant's failure to comply with Local Civil Rule 56.2 demonstrates Plaintiff's understanding of the information that would have been included in such a notice.  Accordingly, Defendant's failure to send the Local Civil Rule 56.2 Notice does not mandate denial of Defendant's Motion.

capable of refuting those facts." *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 642 (S.D.N.Y. 2014).

### B. Plaintiff's Malicious Prosecution Claims

Plaintiff's Section 1983 and state-law malicious prosecution claims require him to establish the elements of a malicious prosecution claim under New York law. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 160-61 (2d Cir. 2010). These elements are "(1) the commencement or continuation of a criminal proceeding against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000) (internal quotation marks omitted).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York," *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003), but the defendant must have possessed probable cause as to each offense charged, *see Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation marks omitted); *see Michaels v. City of N.Y.*, No. 10-CV-2666, 2011 WL 570125, at *5 (S.D.N.Y. Feb. 16, 2011) ("[P]robable cause is evaluated under an objective standard," under which "courts look to the information available to the law enforcement officer . . . and consider the totality of the circumstances.") (internal quotation marks omitted).[7] "[T]he existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g.,

---

[7] Copies of all unpublished opinions cited herein will be sent to Plaintiff.

the time of the arraignment), not the time of the . . . arrest." *Morgan v. Nassau Cnty.*, No. 03-CV-5109, 2009 WL 2882823, at *10 (E.D.N.Y. Sept. 2, 2009) (internal quotation marks omitted). Thus, "[i]nformation obtained 'after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause' for a malicious prosecution claim." *Hoyos v. City of N.Y.*, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) (quoting *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 251 (E.D.N.Y. 2013)).

1. Plaintiff's Claims Relating to VTL §§ 1192(2) and (3) Charges

Plaintiff's claims relating to the VTL §§ 1192(2) and (3) charges must be dismissed because Defendant possessed probable cause to charge him with these offenses. VTL § 1192(2) prohibits "operat[ing] a motor vehicle while [an individual] has .08 of one per centum or more by weight of alcohol in the person's blood." N.Y. Veh. & Traf. Law § 1192(2). VTL § 1192(3) prohibits "operat[ing] a motor vehicle while in an intoxicated condition." *Id.* § 1192(3).

The following facts are undisputed and provided the requisite probable cause: Defendant was informed that a fellow officer observed Plaintiff driving erratically and that Plaintiff was approaching the construction zone on State Route 17. Defendant observed Plaintiff's vehicle approaching that zone, pulled Plaintiff over and asked Plaintiff to exit his car. After Plaintiff exited his car, Plaintiff – by his own admission – walked in an uncoordinated manner. Defendant then arrested Plaintiff and brought him to the State Police Barracks, where Plaintiff submitted to a breathalyzer that revealed a BAC of .08%. Defendant then wrote Plaintiff a ticket for misdemeanor violations of VTL §§ 1192(2) and (3). By the time Defendant wrote these tickets, the above facts were sufficient to establish probable cause to charge Plaintiff with violating VTL §§ 1192(2) and (3). *See Costello v. Milano*, No. 12-CV-7216, 2014 WL 1794886, at *11 (S.D.N.Y. May 6, 2014) (probable cause to charge plaintiff with violating VTL

§§ 1192(2) and (3) where breathalyzer revealed "BAC was .08 percent and Plaintiff failed three field sobriety tests") (collecting cases). Indeed, it is hard to imagine what more than an observation of erratic driving and a test showing a BAC of .08 percent could be required.

At the very least, even if Defendant did not possess probable cause to charge Plaintiff with violating VTL §§ 1192(2) and (3), he would be entitled to qualified immunity because these facts support a finding of arguable probable cause. *See Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (summary order) (defendant entitled to qualified immunity from malicious prosecution if facts supported arguable probable cause to charge, which "exists where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for [the defendant officer] to charge [the plaintiff]' with the crime in question") (alterations in original) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996)); *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) ("Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.") (internal quotation marks omitted). Indeed, removing potentially inebriated drivers from the roadways and enforcing drunk-driving laws involve decisions for which fear of liability ought not to "unduly inhibit officials in the discharge of their duties." *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotation marks omitted). On these facts, it cannot be said that Defendant's "judgment was so flawed that no reasonable officer would have made a similar choice," *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995), and so Defendant would be entitled to qualified immunity even if he lacked probable cause to charge. The malicious prosecution claim is thus subject to dismissal on this alternative ground.

Plaintiff, however, argues that the breathalyzer test could not have formed the basis of probable cause for several reasons. Plaintiff contends that the traffic stop and his arrest were unsupported by probable cause, which would have mandated suppression of the results of the subsequent breathalyzer test at any criminal trial, and thus prohibits Defendant from relying on the breathalyzer results in connection with Plaintiff's malicious prosecution claim. (*See* P's Opp. 7-10.) I will assume that the fruit of the poisonous tree doctrine applies.[8] But contrary to Plaintiff's argument, his traffic stop and arrest were both lawful, or at least it would have been objectively reasonable for Defendant to have believed they were lawful. Defendant had probable cause or arguable probable cause to believe that Plaintiff committed a traffic infraction based on the radio transmission that stated Plaintiff was driving erratically, *see United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (arresting officer can base probable cause on knowledge of fellow officer involved in investigation); *People v. Lypka*, 36 N.Y.2d 210, 213 (1975) ("A police officer is entitled to act on the strength of a radio bulletin . . . from a fellow officer or department and to

---

[8] Based on the Second Circuit's analysis in *Boyd v. City of N.Y.*, 336 F.3d 72 (2d Cir. 2003), which involved a § 1983 malicious prosecution claim for which the court would not permit the defendant to rely on evidence obtained in violation of the plaintiff's Fourth Amendment rights, *see id.* at 77, it seems as if the fruit of the poisonous tree doctrine applies to § 1983 malicious prosecution claims. *Boyd*, however, was decided four years after *Townes v. City of N.Y.*, 176 F.3d 138 (2d Cir. 1999), a case involving a § 1983 false arrest claim, in which the court broadly stated that the fruit of the poisonous tree rule is an "evidentiary doctrine [that] is inapplicable to civil § 1983 actions," *id.* at 145. This inconsistency appears to have been caused by different formulations of the probable cause element in malicious prosecution claims – one line of cases defines probable cause as "probability of guilt," while the other defines it as "probability of success." *Boyd*, 336 F.3d at 76 n.7 (internal quotation marks omitted). Although the Second Circuit in *Boyd* glossed over this difference, *see id.* ("There does not appear to be any conflict between [these] formulations . . . ."), probability of guilt and probability of a successful prosecution are very different where the evidence against the accused is strong but unlawfully obtained. Moreover, *Boyd* neither mentions nor cites *Townes*. Whatever the cause, the inconsistency between *Boyd* and *Townes* has led to inconsistent application of the fruit of the poisonous tree doctrine in § 1983 malicious prosecution claims. *See Gannon v. City of N.Y.*, 917 F. Supp. 2d 241, 245 (S.D.N.Y. 2013) (collecting inconsistent district court opinions following *Boyd* and *Townes*). I need not, however, decide whether the fruit of the poisonous tree doctrine applies to Plaintiff's claims, because Plaintiff's arrest was supported by probable cause, or at least arguable probable cause.

assume its reliability."),[9] which permitted Defendant to pull Plaintiff over, *see Whren v. United States*, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *People v. Robinson*, 97 N.Y.2d 341, 349 (2001) (same).[10]  Plaintiff's unsteadiness when he exited the vehicle, coupled with the report of his erratic driving and his slight dishevelment, provided at least arguable probable cause that Plaintiff was driving while impaired by something – either alcohol, in violation of VTL § 1192(1), or drugs, in violation of VTL § 1192(4).  *See People v. Hira*, 934 N.Y.S.2d 36, 36 (App. Term 2011) (once officer had probable cause of impairment, "[b]ased on [individual's] failure to perform [field sobriety] tests, [officer] had probable cause to arrest [him] for driving while intoxicated"); *People v. Davis*, 879 N.Y.S.2d 268, 269 (App. Term 2009) ("erratic operation" of vehicle provided "probable cause to infer that defendant's ability to operate a motor vehicle was impaired to any extent" as required by VTL §§ 1192(1) and (4)) (internal quotation marks omitted); *see also Hoyos*, 999 F. Supp. 2d at 387-88 ("[T]ypical indicia of inebriation . . . [c]oupled with the [fellow officer's] report of plaintiff's erratic driving . . . are sufficient to give defendants probable cause for the arrest."); *People v. Kowalski*, 738 N.Y.S.2d

---

[9] Both the individual reporting the erratic driving and the police dispatcher were state troopers, so the exception to the collective knowledge doctrine announced in *Colon* is inapplicable.  *See Colon*, 250 F.3d at 135-38 (collective knowledge doctrine inapplicable to information known to civilian 911-operator but not relayed to trained officers).

[10] Plaintiff's argument that he was not, in fact, driving erratically is irrelevant to whether Defendant had probable cause to believe Plaintiff had committed a traffic infraction.  Absent obvious evidence that his fellow Trooper's report of Plaintiff's erratic driving was false, Defendant could rely on that report.  *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("The determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations.") (internal quotation marks and alterations omitted).  Moreover, Plaintiff's odd behavior and lack of coordination during the traffic stop would only have bolstered the report that he was driving erratically.

427, 429 (App. Div. 2002) ("[P]robable cause need not always be premised upon the performance of field sobriety tests.").[11]

In addition to the fruit of the poisonous tree argument, Plaintiff contends that there were several issues with the breathalyzer test – the calibrations "were way off" because the machine had not been recalibrated within six months of Plaintiff's breathalyzer, Plaintiff's asthma medications caused a false positive, and the machine did not generate a printout of the results – each of which would have prevented a reasonable officer from believing the results would be admissible in a criminal trial. (*See* P's 56.1 ¶ 7; Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, ("P's Mem."), (Doc. 75), at 8; P's Motion in Limine 7.) These arguments merit little discussion. First, Plaintiff's assertion about the timeframe within which a breathalyzer must be calibrated for its results to be admissible misstates the law. *See People v. Boscic*, 15 N.Y.3d 494, 500 (2010) ("[T]here has been no strict six-month calibration rule . . . . Rather, the admissibility of breath-alcohol analysis results remains premised on the People's ability to demonstrate, among other requirements, that the device was in proper working order when it was used to test an accused.") (internal quotation marks omitted). Moreover, Plaintiff presents no evidence that the breath-alcohol analysis equipment in the machine was not in proper working order, or that a reasonable officer in Defendant's position would have believed that it

---

[11] Crediting Plaintiff's assertion that there was no alcohol on his breath – despite the subsequent breathalyzer result that indicated otherwise – the undisputed evidence cited in this paragraph was sufficient to support at least arguable probable cause that Plaintiff's apparent impairment was caused by a drug that would not have left an odor on Plaintiff's breath, *see, e.g., People v. Gonzalez*, 935 N.Y.S.2d 826, 827 (App. Div. 2011) (Vicodin is a drug prohibited by VTL § 1192(4)), or that Plaintiff was able to mask the scent of alcohol on his breath. In any event, "the legality of a DUI arrest is not conditioned upon whether the arresting officer specified the correct subdivision of [VTL] § 1192, or upon his belief as to which subdivision had been violated." *Bobolakis v. DiPietrantonio*, 523 F. App'x 85, 86 (2d Cir. 2013) (summary order) (internal quotation marks and alterations omitted); *cf. Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (probable cause evaluated under objective standard and, to support lawful arrest, need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense closely related to the offense invoked by the arresting officer," and "the subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause") (internal quotation marks omitted).

was not in proper working order.  Second, Plaintiff has cited to no New York case, and I have found none, that rejects a breathalyzer test solely because the defendant was on asthma medication.  Plaintiff likewise presents no evidence as to what he told Defendant about any recent use of his inhaler, so even assuming that a reasonable officer would not rely on a breathalyzer result for somebody who recently used an inhaler, there is no evidence as to what Defendant knew about Plaintiff's inhaler use on the day of this incident.  Moreover, even if Defendant were aware that Plaintiff had used an inhaler that could have affected the breathalyzer test, "probable cause does not require that the police rule out innocent explanations for the suspect's activities."  *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 199 (E.D.N.Y. 2010) (collecting cases).  Finally, Plaintiff does not present any evidence to support his assertion that Defendant could only rely on a printout generated by the breathalyzer, rather than the results that appeared on the screen of the breathalyzer.[12]

Accordingly, Defendant possessed probable cause or arguable probable cause to charge Plaintiff with violating VTL §§ 1192(2) and (3), and his malicious prosecution claim as to these charges must be dismissed.

---

[12] Plaintiff seems to argue that the printout is the "best evidence" and thus the only acceptable evidence pursuant to the Best Evidence Rule.  (*See* P's Mem. 8-9.)  Even if the Best Evidence Rule applied – and it seems to the Court that it is an evidentiary rule for trial, not one an officer in the field must apply – based on Plaintiff's assertions that the breathalyzer's printer was not working, it appears as if any failure to produce the printout was due to the internal printer malfunctioning, not Defendant's or Trooper Tinirello's bad faith, so Trooper Tinirello's testimony regarding the breathalyzer results would have been admissible in a criminal trial.  New York's Best Evidence Rule allows for the admission of secondary evidence where the absence of primary evidence is satisfactorily explained.  *See Schozer v. William Penn Life Ins. Co.*, 84 N.Y.2d 639, 644 (1994) (secondary evidence of contents of unproduced original admissible where proponent "has sufficiently explained the unavailability of the primary evidence"); *id.* at 646 ("Once a sufficient foundation for admission is presented, the secondary evidence is subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence . . . .") (internal quotation marks omitted).

2. Plaintiff's Claims Relating to VTL § 375(2)(a)-1 Infraction

VTL § 375(2)(a)-1 requires, among other things, that all motor vehicles activate two functioning headlights 30 minutes after sunset. *See* N.Y. Veh. & Traf. Law § 375(2)(a)-1. The parties dispute whether Plaintiff had two functioning headlights on the date of this incident, and, if he did not, whether he was pulled over less than 30 minutes after sunset.

I need not delve into these factual disputes, because violation of VTL § 375(2)(a)-1 is a traffic infraction, "not a criminal offense, [and] the traffic court proceeding is civil in nature, a regulatory rather than a 'criminal proceeding.' Therefore, the first element of the malicious prosecution claim cannot be met." *Standt v. City of N.Y.*, 153 F. Supp. 2d 417, 434 (S.D.N.Y. 2001); *accord Topolski v. Cottrell*, No. 11-CV-1216, 2012 WL 3264927, at *6 (N.D.N.Y. Aug. 9, 2012); *Harley v. Suffolk Cnty. Police Dep't*, No. 09-CV-2897, 2012 WL 642431, at *8 n.5 (E.D.N.Y. Feb. 28, 2012); *see also* N.Y. Veh. & Traf. Law § 155 ("A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment . . . ."); *Beck v. City of N.Y.*, No. 12-CV-9231, 2014 WL 80544, at *4 (S.D.N.Y. Jan. 3, 2014) ("[T]raffic infractions are civil [rather than criminal] violations.") (collecting cases). Plaintiff's malicious prosecution claim as to his ticket for violating VTL § 375(2)(a)-1 must, therefore, be dismissed.[13]

---

[13] Given the above dispositions, I need not reach Defendant's alternative argument that Plaintiff suffered an insufficient deprivation of liberty to state a malicious prosecution claim. I also note that I have considered all of Plaintiff's arguments – even those not mentioned in this Order – and find them to be without merit.

III.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motions are DENIED. The Clerk of Court is respectfully directed to terminate the pending Motions, (Docs. 73, 74, 82), enter judgment for Defendant, and close the case.

**SO ORDERED.**

Dated: December 8, 2014
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.